And we have Mr. Bill Berry for the appellate and Mr. Mike Podeski for the appellee, and you may proceed, Mr. Berry. Thank you, Judge and the Police Court, Counsel. As you know, I'm Bill Berry. I represent Kim Hopkins, the appellant, the insured in this case. Kim Hopkins owned the western most unit of an eight-unit condominium located in Collinsville, Illinois, referred to as Rolling Oaks Condominium. There are some facts that are uncontested here, I think. In June of 2012, there was a fire that occurred at that condominium that resulted in extensive damage to the eastern four units of that condominium and the eastern most unit of the four western units. So it's easy to understand. This is one building, two support walls, a firewall in the middle of the building, constructed to pursue a code that didn't work very well because fire jumped over the firewall. The four units on the east are damaged. The eastern most unit of the four western units is extensively damaged. It is also uncontested that following the fire, the remaining units, Kim had the western most unit, and she was the newest buyer in that. The western most unit was uninhabitable because all three of those units that may not have had direct fire damage but did have all the water and smoke damage that resulted from fighting the fire were asked to leave by mandate of the city. And in fact, you will see throughout the facts of this case that State Farm, which provided the unit owner's policy to Kim Hopkins, paid Kim for a period of two years for a living cost to live outside of that unit. They never could return to Manhattan. That claim was filed promptly, and under Schedule C, she received those benefits. So I don't think there's any contest that the June fire is an insurable event. There's no contest that she had to leave because they paid under Schedule C. The facts that are relevant after that are that Rolling Oaks filed a separate cause of action against Allstate, which held the condominium association policy. I think that was filed in September of 12. Kim wasn't added. Kim, during the course of the time, subsequently in late June or early July, received a letter from the representative of State Farm saying, we provided coverage under Schedule C, but we are not going to provide repair costs under Schedule A. They cite, she just generally cites Section 1, the exclusions, doesn't go any farther. Kim comes to my office, I file a complaint for declaratory judgment. I rather promptly had moved to join, by the way of mine, I also joined as a defendant Allstate. Allstate was ultimately dismissed. Kim was not a named insured. In the meantime, I moved to consolidate this case with the Rolling Oaks case that was pending for purposes of discovery, make economic sense for it. Subsequently, USAA filed a cause of action for debt, a debt cause of action against one of the unit owners on those western four units, and I moved to consolidate them for discovery. Discovery proceeded for a period of three years, but important events did occur after that, for the record, in August of 2013, the city of Collinsville filed a notice of demolition, which is much due, claiming that all the units had to be torn down. By that time, the easternmost units were torn down, and Allstate, in fact, has advanced money over $600,000 because of the demolition of those units. Contested by Allstate, and ultimately by State Farm, is do we need to destroy the westernmost units? Do they need to be torn down? The city of Collinsville, in August of 2013, sent a notice of demolition saying, yes, we've got to tear them down. I then filed a second minute complaint, joined the city, and what a significant, and I, the very first comment that was filed in this cause of action, it's in the record, I think it's C-182, there's a counterclaim by the city of Collinsville seeking a judgment of this court ordering the demolition of the building. It's a suit against Kimberly Hopkins saying, we're ordering the demolition of the building. Discovery proceeds, the case of the Rolling Oaks against Allstate is tried, it is a successful conclusion, I note in the record that it was settled, that one is resolved, and at issue then is this claim by Kimberly Hopkins to collect under coverage A, presumably the claim under USAA, but that was settled, that's not, but at issue is the US, now the claim by Kim Hopkins to recover benefits under coverage A. Coverage A is to repair the interior, reconstruct the interior of the unit. Mr. Berry, I was trying to kind of follow, and I've read it a couple of times, but has the exterior been rebuilt of the complex? No, at issue, there are a number of things, it has been torn down, everything's been demolished, it's on Johnson Hill Road there off of Collinsville, you're not from the same area, all units now have been torn down on it, and there has not been any reconstruction on it, there is a new buyer, that's not part of the record, there's a new buyer that anticipates rebuilding, but that's kind of outside the facts of this case, in the facts are, you'll see the city of Collinsville was dismissed shortly before we argued, or maybe the day we argued our motion for summary judgment, and that was because the demolition had occurred. So we have a new buyer going, the issue in this case is, well I've divided it into three components, the issue is, why is it Kimberly Hopkins entitled to collect under coverage  The reality is though, we're talking purely monetary recovery, because there is no rebuilding of her There's no rebuilding, there's money, now keep in mind, $600,000 plus has been deposited in Rolling Oaks, they got another, they got a judgment for $600,000, and that's one of the big distinctions here, the condominium association has liability coverage to build the exterior of the building, that's the very nature of this thing. The statute that is so important here, and I'm going to kind of go backwards, because I think the real issue here is the public policy issues I delineated at the end of the brief, and the ambiguity issues, I'm going to take, as I've been known to do, go backwards. Well I appreciate that, and if you could start with the ambiguity issue, only because I have a little difficulty understanding what the ambiguity is, and then I don't want to stop you from going into the public policy. The ambiguity is this, there is, you almost have to compare the two policies, now in the evidence you will see, State Farm at one time had issued a condominium association policy to cover Rolling Oaks, not an issue here, but it shows that they have, and that association policy included the endorsement that all state included, and is, that supersedes the law on ordinance exclusion. In Kimberly Hopkins policy, and I delineated beginning of coverage A, it says we will provide coverage for the unit owner's responsibility, I'm paraphrasing, but the unit owner's responsibility. And that opening paragraph also includes, which will include the unit owner's proportionate share of any deductible that may be owed under the condominium policy. Now that was pursuant, that second phrase is pursuant to section 12 of the condominium act, and I acknowledge the only mandate imposed on the unit owners in that act is that they have a policy that would protect against liabilities, somebody falling inside their own unit, and would include coverage for that deductible. And the purpose of that whole condominium association act was to make sure that the association had enough money to rebuild. The law on ordinance exclusion that's in the unit owner's policy, issued to Kim, refers to an ordinance that imposes no construction obligation on her. She must merely, well not merely, but we're talking about a sizeable amount of money here, but she must reconstruct the interior of her unit once the building is built. But somewhere I think you talk about trusses? Well, there are always issues on these, I've never had to litigate them. You build the exterior of the building for the right reasons, it's foundation, it's walls, it's wood, and then they argue about who should pay for the support walls. And I've had one case where they actually built, you know, they built the support structure, but the bearing walls then had to be, the unit owner's policy had to fill in, put in the dry wall, and of course the non-bearing walls divide up the rooms. The condominium association policy puts in the subfloor and all the subfloors that would be in there. But the finishing part of the unit is by the unit owner. Now keep in mind, these policies, unit owner policies, the distinction between association and unit owner, that unit owner policy is issued and names Kim as a named insured, but also the mortgage holder, Collinsville Building and Loan, which I was smart enough to add in the first amendment complaint. They should have done so at the beginning. They're party members. They're advised of all of it. But they want that policy because they, that security for their loan, and the security for their loan is not an unfinished unit, but a finished unit. Well, along those same lines, was there any way for her to get a rider that would have covered the exclusion in law? It's not even, we don't know that, to be honest with you. That was never addressed in all the discovery. Now, you say, well, it's yes. Well, one of the reasons I address it later is the issue is not raised until after, three years later, two and a half years later. And if the condominium association policies by statute should include that, although you'll see in the briefing, there's actually a decision that says the association has to ask for it. It's not mandated upon the insurers to provide it. That's an old decision. I'm not sure that would stand now. But in this particular case, when Rolling Oaks went to the state bar to get it in 2004, it went to all states. The condominium associate policy had the endorsement that superseded the ordinance. Now, I'm going to Chicago by way of Florida. I apologize. What's the ambiguity? In this case, State Farm says this ordinance violation, this ordinance imposition, rather, this exclusion, requires that the exterior of the building, the foundation, be reconstructed based upon upgraded building code laws. Those upgraded laws are because, in 2006, are to take into account the fact that in our area, around St. Louis, we now know about the pneumatic fall, but it's to impose greater seismic depth to the construction of the building to withstand stronger earthquakes. We hope never comes, but we're told will come. That's the whole purpose of it. But at no time is Kimberly Hopkins insuring against that risk. Her insured responsibility is to the resident unit to have coverage to reconstruct the interior of the resident unit. The association builds the building. It has support trusses for the wall. I mean, they can't build a building and not have some kind of support wall on it. I kind of imply that, but that's not it. But the address of the interior of the building, that's why Kim buys a policy, and that's coverage A. And none of these, nothing in that ordinance applies to it. The rule that I cited set forth in Bozek and the other decisions, the rule of determining ambiguity is when a reasonable interpretation by the insured would come to a conclusion other than what is argued by State Farm is clear on the face language of the policy. Now, a reasonable interpretation, by the way, if the ambiguity occurs, I've argued that in front of this court more than once over many years, it's decided against the insurer that drafts it. Kimberly Hopkins, our in-unit owner, is a reasonable interpretation that reconstruction of the interior of the unit for which they are buying and paying a premium for coverage A would include obligations to meet construction requirements that are imposed only on the association. At no time will she have to engage any contractor to meet any of these upgraded seismic building code obligations that ultimately are determined to be applicable when the units are torn down. Now, by the way, keep in mind throughout this entire time, it is acknowledged by State Farm that the existing building is uninhabitable. They pay, and you'll see they said they paid under coverage C for her to have full living accommodations for the two years, the full amount of the coverage. The ambiguity is simply that. When I read the ordinance exclusion, do I as the insured anticipate that I need to go back to them and say, give me an exception to your exclusion? Mr. Berry, you mentioned BOSEC. State Farm takes the position that BOSEC controls, so I'm asking you why doesn't it? Well, one of the things I pointed out at the beginning of BOSEC, BOSEC is third district, I think, an appellate decision, but at the very beginning of BOSEC, that sort of transcended into the public policy, at the very beginning, BOSEC said, plain phrase an issue of public policy as to these anti-concurrent clauses. Now, keep in mind, BOSEC is that overriding anti-concurrent clause, and they say, not briefed or not specifically addressed, we save it for another day. The public policy issue?  Because at BOSEC, BOSEC, let's distinguish BOSEC and Cohen. Keep in mind, in Cohen, the third district has said, the ordinance in law violation is not contrary to public policy, but there are distinguishing factors to it that I think are very important, and that brings in the Supreme Court decisions in Reyes and through the Sabbath, I always mispronounce that name, but the most recent public policy issue. Let me tell you why. In BOSEC, one insured, one insurable object, there is a pool. There is no dichotomy of ownership, there is no dichotomy of responsibility. The insurer owns the pool, the insured insures the pool, one insurer. And in BOSEC, it said, the anti-concurrent clause is valid in this case, simply because the concurrent event was the upheaval, that caused the insured aspect of it, the failure of that vow to occur. So we've got one insurable event, but it's concurrent with the non-insurable event, non-insurable event prevails. BOSEC is after Cohen, and BOSEC defers on public policy. It leaves that open for another day. In Cohen... Can you tell me then, what do you think is the prominent public policy issue? Right, in this case. In our case. In this case, we have two dichotomies of responsibility. The association must carry a policy mandated by statute to reconstruct the building. That is what imposes upon the insurers to provide a policy that includes the endorsement that supersedes the law and ordinance. And State Farm says that because that was written into the statute, that they were well aware that they could have also made some kind of adjustment to policies for the title owner. I'm not sure they directly said Kim should ask for it, but that's the implication. Right. That's the implication. Now, what they are saying is the unit owner should be sophisticated enough to know about these things, which is a demand that I think is not imposed by the court. But let's compare what we have here, a statute that imposes an obligation on the association to have coverage to rebuild the exterior of the building, to the events of Reyes and Puget Sound. Because in Reyes, we had an auto policy in which the named insurer has an endorsement that excludes coverage to the named insurer. An accident occurs, a passenger makes a claim against the named insurer, the primary policy over American access denies coverage. And State Farm, interestingly enough, has the UIM cover, the uninsured, I'm sorry, motorist coverage in Reyes, and they argue, no, because the driver responsibilities section, that statute imposes an obligation on every driver to have insurance. You can't issue a policy and then add an endorsement that says that we won't cover under this policy. But State Farm wants to distinguish that case on the basis that it's a third party. I'll get to that in just a second because I understand that. Now, look at Puget Sound. State Farm is also involved. Now, here in Reyes, as I described the language, State Farm considers that under the plain language of the code, coverage is required to Reyes. We agree. State Farm advanced the argument that the Illinois Supreme Court adopted in saying that endorsement in this case is contrary to public policy. You can go ahead and continue with your thought, and then you'll have some rebuttals. Okay, but Puget Sound is just simply, and I'll address it in a rebuttal. Puget Sound, State Farm takes the opposite position, and the Supreme Court rejects it. Goose and Gander argue. Okay, thank you. You'll have an opportunity to rebut. Mr. Podeski. May it please the Court, my name is Mike Podeski. I'm representing the Appalachian State Farm in this case. One thing I just wanted to mention is I didn't hear anything from Mr. Berry about the Estoppel argument. We filed a motion to strike. I really don't have anything to add other than what's in that motion. I looked through the entire record of this case and all the pleadings that were filed. There's no mention of Estoppel in the trial court under that Parks case that we cited in our brief. Arguments made for the first time on appeal are waived according to the Illinois Supreme Court. So I won't spend a lot of time on that. I'll just go ahead and move to the ambiguity argument, which was addressed here. I believe that motion was taken with the case. Right, yes, yes, Your Honor. So, with regard to the ambiguity, Your Honors, excuse me, I apologize. It's not just two interpretations that are possible. Both interpretations of the policy have to be reasonable interpretations. It's our position here that the plaintiff is arguing an unreasonable interpretation of the policy. What Mr. Berry argued was that, well, you know, because the ordinance exclusion would only apply to sort of the exterior portion of the building, you know, the joists and the concrete and the foundation, it really wouldn't apply to the unit owner because that's sort of an exterior part of the building. Well, let me just make something very clear here, okay? The point of the exclusion here is that the City of Collinsville is enforcing the new 2002 International Building Code. That's the reason why the building was completely demolished. In the beginning of this case, and this case has gone on for a little while, there was an initial theory that those four westernmost units, the ones that were not significantly damaged, they might be salvaged, and then the thought was the Association was going to go ahead and rebuild the four that were significantly damaged, that were torn down, and just attach them to the remaining units. Because in this particular situation, Ms. Hopkins' unit just had some minor smoke damage to it. It was cleaned up by State Farm. Obviously, she couldn't live there. The City said no one could live there. But the point is, in terms of the damage to the unit, it was cleaned up. There wasn't any burning, destruction to her unit. But what happened was, you know, the Association got turned down by the City of Collinsville. Collinsville hired this lawyer and associates, the engineers, and they decided, well, we really can't do that. You basically have to demolish all of the units. You can't just rebuild the four and attach them onto those western units that weren't that badly damaged. So the bottom line in all this, Judge, is the enforcement of the City Ordinance, the 2002 International Building Code, demolished the entire structure. It didn't just demolish the outside portion that Mr. Berry is talking about, that the Association would have an obligation to ensure for the roof and the foundation and the walls. But by execution of the Ordinance, everything was destroyed. Well, that's the reason why there's this request for coverage in the policy, because it's not just a portion of the condo being demolished. It's the entire condominium being demolished. It's an integrated structure. Obviously, there's a roof, there's walls, and there's a foundation, but there's also the interior portion, so the City tore up everything. I just don't think that the interpretation of the building law's exclusion is reasonable. It's advanced by the plaintiff here. Because, again, this is sort of this piecemeal argument that, well, the Association, they have to do this part, and you ensure this part, and because she didn't have responsibility to this sort of seismic thing about the foundation and the basement and the bracing for the seismic requirements, that doesn't have anything to do with her. Well, the problem, again, with that is, because of the enforcement of that requirement, her property was demolished. Because, remember, at the beginning, right after the fire, she didn't have that kind of damage. The thought was they would salvage her unit and those other two units next to her and just build four of them. So I just don't believe that that's a reasonable... But I guess what I'm not real clear on, Mr. Podeski, is under the homeowners policy, I mean the Association's policy, they had to cover any ordinance as the policy was renewed. Annually, correct? Right. That's required under the statute, Your Honor. Right. So regardless of the fact that she did not have the same type of damage as the ones that, I guess, were gutted by fire, she still would have had to have the exterior redone, correct? Right. These policies are supposed to work together. That's true, because the sort of abetterments, the fancy carpet, the fancy wall coverings, these sorts of things are covered by the unit owner's policy, whereas the exterior, the walls, the foundation and so forth, that's the Association policy and the statute, the condo statute in Illinois requires that it would cover for the upgraded building code. Okay. So I guess what I'm unclear about is what about the other four units that were damaged, gutted by fire? You're saying that they also have the same issue with respect to their interior, too, as Kim does? I don't think that necessarily is the case, because the fire completely destroyed them. What happened with Kim's, with Ms. Hopkins, her unit was not completely destroyed by fire. She had a little bit of smoke issue, State Farm cleaned it up. So again, the theory was at the beginning of this thing, some years ago, the Association said let's just rebuild the four, have those four rebuilt and attach them on to the other ones that weren't destroyed. But that wasn't possible, correct? Well, they didn't know that initially. I mean, they're trying to save some money on the deal. Sure. I'm trying to figure out what really is the difference, even though one was gutted by fire and the other had smoke damage. Exactly. The difference is this. It's the concurrent cause clause. What happened was there's two losses here to Ms. Hopkins. The first is the fire caused this whole event to occur. She had to leave. The second event that caused the loss was the city's enforcement of the updated building code. That is a loss because they demolished her building. Because of the upgraded code, they couldn't just build on to it because of the seismic requirements. So that's why we have that concurrent cause clause, and that's why it's different from, let's say, the first unit down there that was completely destroyed by the fire. Because the only thing that caused the loss there was it was completely burned out and destroyed by the fire. Ms. Hopkins' unit was not destroyed by fire. It was salvageable, theoretically. But it wasn't salvageable because it was built in the early 80s, late 70s, and because of that new Madrid fault and the 2006 International Building Code, because there's all this new construction with it, you have to have the increased seismic requirements. It was the opinion of Loyette Associates and the city of Collinsville that it didn't make sense to try to do that. They had to just demolish it all economically. It just wasn't going to work. So the upside is that if it's totally destroyed by fire, you get, I guess, replacement costs. And if you're so unlucky as to just have smoke damage, then you have to bear the entire cost of the interior. It's an unusual, factual scenario. And when you say unusual, factual, that's where, to me, the public policy issue kind of looms. Was there a rider that she could have? Oh, sure. Yeah. I mean, once State Farm accepts a risk, they want to sell you life insurance. They want to sell you health insurance. They want to sell you disability insurance. They want to sell you every kind of insurance possible. There was a rider that said that they would cover this exclusion. It's an extra price because, again, it's going to cost more. But that's an extra exposure on the policy. And she should have known that, as the mortgage company should have known it, because apparently they're in the same position she is, correct? Well, the mortgage company has an interest on the policy. That's right. But, again, I mean, the public policy is spelled out in the Condominium Act. And that Condominium Act, Your Honor, has absolutely no requirement for any kind of property insurance for unit owners. Now, just so we're clear on one thing that hasn't been mentioned yet, but I want to mention it. The coverage requirement for the association, there's actually overlap for the individual units. So it's not like a situation where, yeah, we can put up a building, we can put up a ceiling, some walls, and there's just everybody else has to live in a tent on a concrete floor. That's not sort of the reality here. The required coverage for the association, it includes the condominium elements and the units. And this is Section 12 against the Statute 765 ILCS 605-12. It talks about the coverage that's required, including coverage sufficient to rebuild the insured property in compliance with the building code. And the insured is mandated under the subdivision A-1 must include the units, the limited common elements. And they talk about the common elements includes fixtures located within the unfinished interior surfaces of the perimeter walls, floors, and ceilings of the individual units initially installed by the developer. And they exclude, like I told you earlier, the betterments or the fancy carpet and so forth. So the point is there actually is some degree of overlap between that all-state policy that the association had and the state farm policy that Ms. Hopkins had. So it's not like these people aren't necessarily going to be homeless. Now, obviously, more coverage is always better when you have a loss like that. But I think that the policies aren't completely separate from one another. There is some degree of overlap in coverage even into the individual units. The other thing I wanted to mention was this sort of analogy to, well, you know, there's a public policy mentioned, these excess, I'm sorry, the Reyes case and this Thunziveth case. I'm sorry, I can't pronounce it either. Okay, those were auto cases, and they dealt with mandatory coverages under the Motor Vehicle Code. And there's lots of cases where the Illinois Supreme Court says if coverage is mandated by statute, you cannot do away with that or limit that by contract. And I think one of the more recent ones, Justice Conrad actually said under the Motor Vehicle Code, liability, UM and UIM coverage are inextricably intertwined. So what that means is, for example, in this Reyes case, drivers have to have liability coverage. The person that's the main insurer can't be excluded. I mean, that's against public policy because if you buy an auto policy, liability policy for your vehicle, you can't exclude yourself. That would violate the Motor Vehicle Code. Likewise with this Thunziveth thing, that was underinsured motorist coverage. Again, the main insurer can't be excluded from underinsured motorist coverage mandated by statute, mandated by the Motor Vehicle Code. Well, we have the opposite situation here with the Condo Act. The only mandated coverages under the Condo Act for the individual unit owners is liability coverage, and that's only when it's required by the board of directors or the condo association bylaws. So the operative statute that expresses the public policy for the condominiums is the Illinois Condominium Act, so there's no property coverage mandated at all for the individual unit owners, but it does mandate the property coverage for the condo association. We talked about that earlier, how there was some degree of overlap into the individual units, and that's why the Allstate policy, which is involved in this particular loss, had that coverage for the updated building code. So we don't have the type of public policy sort of statutory violation argument that Mr. Berry was mentioning because that Motor Vehicle Code is very specific, and those cases are very clear that you can't limit it when it's required by statute. We don't have the statutory requirements here, mandated coverages under the Condominium Act. It was mentioned that the Bozak v. Erie case was mentioned earlier in the argument. That is directly on point. This is an application of the anti-concurrent cause clause where you have the damage to the pool and there was water pressure, and there was an exclusion for water pressure below ground, and there was a bunch of rain, and it started to push on this in-ground pool, and the pressure relief valve on the in-ground pool failed. Well, the pressure relief valve failure will be covered, but there was an exclusion for this below ground water pressure, and the Bozak court said, well, that's an example of concurrent causation where the loss occurred both because of the pressure of the water and also the failure of the valve, and so that's why it was excluded because there's two causes, one of which was excluded, one of which was not, and that's the same situation here like I mentioned earlier, Your Honors, and that's why Bozak is on point. We have a cover loss, which is the fire, but again, the reason why the loss actually occurred that's coverage A is being requested, that loss is because of the enforcement of the building code, so the city demolished the unit. So that's why it's persuasive here. That's why it's on point. Was there a public policy argument in the Bozak case? No, it was not made in the Bozak case. And that was raised by the court, wasn't it? It was mentioned at the tail end of the opinion, and I think one of the parties or the plaintiffs might have mentioned it, but it wasn't briefed, but there was some deficiency, and the court did not consider that. I can't recall exactly how it went down, but the point is it wasn't sufficiently raised, so they did not consider that. And that's the only anti-concurrent causation case that you've been able to find in Illinois? Well, in the state of Illinois. I mean, I cited a bunch of them from other states, but I understand that. And the vast majority of states, now the Supreme Court of Massachusetts case, they did kind of a survey check, and the vast majority of cases have upheld anti-concurrent cause clauses, but not ambiguous. I cited a bunch of different states in there. So that's all I have to say, unless there's additional questions. I just ask that this Court affirm the trial court's judgment. Thank you. Thank you, Mr. Baird. Mr. Barry, do you have a bottle? Well, I've been in more than one campaign myself. I always remember when I'm quoted by the other side. Mr. Podeski just said something important. The policies are to work together. And then in quoting a more recent Supreme Court case, he said, the Drug and Responsibility Act is inextricably entwined with the policy. It's exactly what we have here. Except there is no statute that controls the unit owner the way there is in the auto cases. There is not except. How do we justify making the association provide coverage to build the exterior and then say, all right, you've got to bear the cost of the interior? Now, yes, there may be overlapping coverages, but that is the public policy issue. Did the legislature miss it? I've been chairman of the Racing Board. I've seen them miss a lot of things. Did they miss it? Maybe. But the intent was to impose the big obligation on the person, on the entity that has to build the building. You earlier asked about the distinction between first-party and third-party cases. That's a Kramer decision from the Illinois Supreme Court. That's actually in that first issue I raised. I recognize that I'm raising an estoppel issue. A legitimate argument is, can that be raised now? Do you have highways that might motion contrary to the motion to strike that this court has the right to review to no vote on a motion for summary judgment? But the Kramer case was raised in the appellee brief about third-party and first-party claims. A third-party claim, the Supreme Court majority opinion said, that's where a third-party sues the insurer. I relied on cases on defense, duty to defend. The Kramer case was the obligation to settle within the limits. I quote and rely, and I've argued it before and addressed it before, the concurring opinion where the court, where the justice said, there is no, you've got a basic fiduciary responsibility between insurer and insurer. The insurer buys a policy, and the insurer is to provide that policy. And there's really no distinction between third-party and first-party claims. And that's well set forth in there. I've addressed that in the concurring opinion. Mr. Podesta has just said that State Farm offered an endorsement in the union order policy. It's not part of the record. I have no reason to contest that. But what State Farm is asking is that the union owner should be sophisticated enough that when they go or she goes to the broker, the State Farm agent, and says, I need a policy to cover, that she is given the policy necessary to provide cover. I guess my point, too, with Mr. Podesta asking about the mortgage company, because they're left holding the bag, too. They're left holding the bag, too. They want to make sure that the property is insured for its value. So it returns to value. Exactly. Now, is the public policy that the individual union owner should be that sophisticated? Is the public policy that they should be asking for an endorsement in which they have no knowledge? But who knows about these endorsements? We, as lawyers, struggle with them all the time, and we understand them as a result of deep reading and thought. State Farm says that's their burden. That's her burden. Now, Mr. Podesta kind of says this is an unusual situation. The condominium ownership is not unusual. In my age group, it may be the majority ownership. We are always going to be subject to this kind of conflict. The purpose of the legislation was to remove this kind of conflict. As Mr. Podesta said, the policies are designed to work together, not to issue a policy that will build the exterior but find some way to avoid the reconstruction of the interior. Judge Harrison, in his opinion, didn't look at it. My biggest argument, in summary, Judge, was policy, public policy. I understand that address that it was denied, as I note, there's nothing specifically in the order as to the reason for the denial. My motion for summary, Judge, was a partial. Find there's coverage, and I'm asking that this Court reverse that. Find that there is coverage for Kim Hopkins under coverage A and remand it back for the sole issue of determination. And I hit it right on the button. Thank you. Thank you, gentlemen, for your briefs and argument. And as Justice Moore said, we will be taking State Farm's equitable stop a motion with the case, and it will be part of the order. At this point, we're going to take a break.